IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
SALLY HARSHAW RAMSEY,          )
                               )
          Plaintiff,           )
                               )
     v.                        )      1:13CV553
                               )
CAROLYN W. COLVIN,             )
Acting Commissioner of Social  )
Security,                      )
                               )
          Defendant.           )
```

**MEMORANDUM OPINION AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Sally Harshaw Ramsey, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (See Docket Entry 2.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 14, 17). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

**PROCEDURAL HISTORY**

Plaintiff applied for DIB and SSI, alleging a disability onset date of May 15, 2006. (Tr. 236-48.) Upon denial of those applications initially (Tr. 78-111, 146-56) and on reconsideration

(Tr. 112-45, 163-80), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 184, 187-89). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing (Tr. 31-51), at which Plaintiff amended her alleged onset date to November 21, 2009, the day after an ALJ's unfavorable decision on a prior application for DIB and SSI (see Tr. 35, 52-66). The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act. (Tr. 18-30.) The Appeals Council thereafter denied Plaintiff's request for review, thus making the ALJ's determination the Commissioner's final decision for purposes of judicial review. (Tr. 1-5.)

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2011.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since November 21, 2008, the alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: congestive heart failure[,] hypertension, obesity, asthma, bipolar disorder, and post-traumatic stress disorder.
>
> . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
> 5. . . . [Plaintiff] has the residual functional capacity to perform sedentary work with lifting or

carrying 10 pounds occasionally, no balancing or crouching, and no operation of a motor vehicle. She is also restricted to performing simple, routine, repetitive tasks involving only occasional interaction with co-workers and none with the general public.

. . .

6. [Plaintiff] cannot perform any past relevant work.

. . .

10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform.

. . .

11. [Plaintiff] has not been under a disability, as defined in the . . . Act, from November 21, 2008, through the date of this decision.

(Tr. 23-30 (internal parenthetical citations omitted).)[1]

## **DISCUSSION**

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

---

[1] The ALJ's references to "November 21, 200**8**" as the alleged onset date (Tr. 23; see also Tr. 30) constitute typographical errors. Review of the hearing transcript (see Tr. 35) and the date of the prior ALJ's decision (Tr. 52-66) demonstrates that Plaintiff amended her onset date to November 21, 200**9**.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to

4

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a

---

[2] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[3] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and

---

[3] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65.  If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[5]

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[5] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail

7

### B. Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

(1) "[t]he ALJ's step two finding that fibromyalgia was not a severe impairment was not supported by substantial evidence" (Docket Entry 15 at 2);

(2) "[t]he ALJ erred by failing to credit the opinions of [Plaintiff's] treating physicians" (id. at 9); and

(3) "[t]he ALJ committed error by failing to inform the [VE] that [Plaintiff] would be off-task at least 25% of the time, and by failing to tell the VE that [Plaintiff] had moderate concentrational limitations, and the frequency and duration of her concentrational lapses" (id. at 16).

Defendant contends otherwise and urges that substantial evidence supports the finding of no disability. (Docket Entry 18 at 4-20.)

**Fibromyalgia as Severe Impairment**

Plaintiff contends the ALJ should have categorized her fibromyalgia as an additional severe impairment at step two of the SEP. (Docket Entry 15 at 2-9.) In that regard, Plaintiff

---

at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

emphasizes that "[t]he ALJ . . . made no definitive finding as to whether [Plaintiff] ha[d] fibromyalgia," noting only that Plaintiff "ha[d] complained of 'discomfort' in her back, arms and thighs, and that this pain '*was attributed to*' fibromyalgia." (Id. at 2 (citing Tr. 24).) According to Plaintiff, Dr. Robert A. Roubey, a rheumatologist who examined Plaintiff "specifically to determine whether [Plaintiff] ha[d] fibromyalgia," (id.), found that Plaintiff exhibited 16 of the 18 tender points characteristic of fibromyalgia and indeed concluded that Plaintiff "likely ha[d] fibromyalgia" (id. at 2-3 (citing Tr. 351-52)). Further, Plaintiff asserts that her treating physician, Dr. Arthur Axelbank, also "belie[ved] that [Plaintiff's] pain was caused largely by fibromyalgia" because he "had a long talk with [Plaintiff] about her fibromyalgia, . . . gave her a book about [fibromyalgia]," and found Plaintiff's "upper body aches and pains . . . consistent with fibromyalgia." (Id. at 3-4 (citing Tr. 495-96, 578).)[6] Plaintiff argues that the ALJ's failure to discuss these relevant findings "shows a reluctance on the part of the ALJ to concede material facts that favor [Plaintiff] . . . [and] judicial bias, which [the

---

[6] Plaintiff additionally argues the relevancy of a psychotherapist's finding that fibromyalgia constituted a "precipitating stressor" of Plaintiff's mental impairments. (Docket Entry 15 at 4 (citing Tr. 638, 642).) However, as a licensed clinical social worker, the therapist lacks the medical expertise to diagnose fibromyalgia and thus Plaintiff's reliance on this evidence misses the mark.

Court should] treat[] as separate error and a ground for reversal." (Id. at 3.)

Moreover, Plaintiff disputes the sufficiency of the ALJ's stated bases for the non-severity finding. (Id. at 5-9.) Plaintiff faults the ALJ's reliance upon the lack of objective findings in Plaintiff's treatment records, such as skeletal deformities, edema, impaired balance and gait, decreased range of motion and strength, and neurological deficits, where "there is no evidence that such symptoms are indicia of fibromyalgia." (Id. at 6 (citing Robertson v. Astrue, No. 6:10-597-HMH-KFM, 2011 WL 1559209, at *10 (D.S.C. Mar. 22, 2011) (unpublished) (in turn citing Malloy v. Astrue, 604 F. Supp. 2d 1247, 1249 (S.D. Iowa 2009))).)

For purposes of step two, an impairment fails to qualify as "severe" if it constitutes only "a slight abnormality . . . that has no more than a <u>minimal effect</u> on the ability to do <u>basic work activities</u>." <u>Policy Interpretation Ruling Titles II and XVI: Considering Allegations of Pain and Other Symptoms in Determining Whether a Medically Determinable Impairment is Severe</u> ("SSR 96-3p"), 1996 WL 374181, at *1 (July 2, 1996) (emphasis added). Applicable regulations further identify "basic work activities" as:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;

10

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b), 416.921(b).

Plaintiff bears the burden of proving severity at step two. <u>Hunter</u>, 993 F.2d at 35; <u>see also</u> <u>Kirby v. Astrue</u>, 500 F.3d 705, 708 (8th Cir. 2007) ("Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard . . . ." (internal citation omitted)).  To carry that burden, Plaintiff "must provide <u>medical evidence</u> showing . . . an impairment(s) and <u>how severe it is</u> . . . ."  20 C.F.R. §§ 404.1512(c), 416.912(c) (emphasis added); <u>see also</u> Social Security Ruling 85-28, <u>Titles II and XVI: Medical Impairments that Are Not Severe</u> ("SSR 85-28"), 1985 WL 56856, at *4 (1985) ("A determination that an impairment(s) is not severe requires a careful evaluation of the <u>medical findings</u> which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities . . . .  At the second step of [the SEP], then, <u>medical evidence alone</u> is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." (emphasis

added)); Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003) ("The step two severity determination is based on medical factors alone . . . ." (emphasis added)); Washington v. Astrue, 698 F. Supp. 2d 562, 579 (D.S.C. 2010) ("A severe impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. . . . A claimant's own description of her physical or mental impairments is not enough . . . . [SSR] 85-28 specifically provides that medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." (internal quotation marks omitted) (emphasis added)); Flint v. Sullivan, 743 F. Supp. 777, 782 (D. Kan. 1990) ("A claimant's statements regarding the severity of an impairment are not sufficient."), aff'd, 951 F.2d 264 (10th Cir. 1991).

As an initial matter, the parties dispute whether the ALJ even found that Plaintiff suffered from fibromyalgia. (Compare Docket Entry 15 at 2, with Docket Entry 18 at 5-6.) As mentioned above, Plaintiff asserts that the ALJ did not make a "definitive finding as to whether [Plaintiff] ha[d] fibromyalgia." (Docket Entry 15 at 2.) In contrast, the Commissioner asserts that, "[i]n discussing the evidence related to fibromyalgia, the ALJ [did] not attempt[] to discredit the diagnosis, but to show that Plaintiff's condition d[id] not impose significant physical limitations." (Docket Entry

18 at 5-6 (emphasis added).) However, the wording of the ALJ's decision favors Plaintiff's interpretation – the ALJ acknowledged only that Plaintiff's "discomfort in her back, arms and thighs . . . was <u>attributed</u> to fibromyalgia" (Tr. 24 (emphasis added)), and later, in summarizing his step two findings, referred to Plaintiff's condition not as "fibromyalgia" but as "complaints of back and joint discomfort" (<u>id.</u>).

Given that interpretation, the ALJ erred by failing to even find Plaintiff's fibromyalgia a medically determinable impairment at step two. Most significantly, the record reflects that treating physician Dr. Axelbank included "fibromyalgia" among Plaintiff's diagnoses on his Physical Medical Source Statement. (<u>See</u> Tr. 676.) Beyond that diagnosis, Dr. Roubey's examination established that Plaintiff had a "history of myalgia, 16 [of] 18 tender points, normal lab tests, and no other abnormalities explaining [her] pain" (Tr. 351), which satisfied the criteria expressly recognized by the Commissioner as appropriate to find fibromyalgia a medically determinable impairment. <u>See</u> Social Security Ruling 12-2p, <u>Titles II and XVI: Evaluation of Fibromyalgia</u>, 2012 WL 3104869, at 2-3 (July 25, 2012) ("SSR 12-2p") (providing that an ALJ "may find that a person has a[] [medically determinable impairment] of [fibromyalgia] if he or she has all three of the following: 1. A history of widespread pain . . . in all quadrants of the body . . . and axial skeletal pain . . . that persisted for at least 3 months.

13

The pain may fluctuate in intensity and may not always be present. 2. At least 11 positive tender points on physical examination. . . . 3. Evidence that other disorders that could cause the symptoms or signs were excluded."). Thus, the ALJ erred by failing to find Plaintiff's fibromyalgia a medically determinable impairment.

The ALJ's error in not recognizing Plaintiff's fibromyalgia as a medically determinable impairment appears to have caused the ALJ to analyze the severity of the condition inconsistently with applicable standards, see SSR 12-2p, 2012 WL 3104869, at *2-3 (describing recognized criteria for evaluating fibromyalgia); see also Robertson, 2011 WL 1559209, at *10 (finding "full range of motion, normal neurological examination, no muscle atrophy, and no loss of sensation" irrelevant to assessment of fibromyalgia). Specifically, the ALJ relied solely on findings not associated with fibromyalgia, such as the absence of skeletal deformities, edema, problems with balance or gait, decreased range of motion, decreased strength, and neurological deficits to support his non-severity determination (see Tr. 24), likely because the ALJ did not give proper consideration to Plaintiff's fibromyalgia diagnosis (see Tr. 23-24).

Where (as here) an ALJ concludes that a claimant suffers from at least one severe impairment, any failure to categorize an additional impairment as severe generally does not constitute

14

reversible error, because, "upon determining that a claimant has one severe impairment, the [ALJ] must continue with the remaining steps in his disability evaluation." Maziarz v. Secretary of Health & Human Servs., 837 F.2d 240, 244 (6th Cir. 1987); accord Oldham v. Astrue, 509 F.3d 1254, 1256-57 (10th Cir. 2007); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); Lauver v. Astrue, No. 2:08CV87, 2010 WL 1404767, at *4 (N.D.W. Va. Mar. 31, 2010) (unpublished); Washington v. Astrue, 698 F. Supp. 2d 562, 579 (D.S.C. 2010); Jones v. Astrue, No. 5:07CV452FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (unpublished). In this case, however, the ALJ's analysis at the remaining steps of the SEP materially conflicts with the ALJ's step two determination and, thus, the Court should decline to excuse the ALJ's handling of the fibromyalgia issue as harmless error.

More specifically, in deriving the RFC, the ALJ analyzed Plaintiff's credibility following the two-part process set out by Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements ("SSR 96-7p"), and applied by the Fourth Circuit in Craig, 76 F.3d at 594-95. Significantly, at part one, the ALJ made a threshold determination that Plaintiff had "medically determinable impairments [that] could reasonably be expected to cause the alleged symptoms." (Tr. 27 (emphasis added).) In describing her symptoms, Plaintiff testified

that her fibromyalgia has a "tremendous" effect on her every day (Tr. 40), and that her pain occurs "all over" her body and mostly in her neck and lower hips (Tr. 41). Plaintiff indicated that the medications she took did not alleviate her pain. (Id.) Thus, the ALJ's part one Craig finding indicated he determined that Plaintiff had a medically determinable impairment that could cause the daily, significant pain Plaintiff attributed to fibromyalgia. Yet, at step two of the SEP, the ALJ found Plaintiff's "back and joint discomfort" non-severe (Tr. 24), did not find that Plaintiff had fibromyalgia, and did not find that Plaintiff had any severe impairments which could reasonably be expected to cause daily, significant pain all over her body (see Tr. 23 (finding severe Plaintiff's congestive heart failure, hypertension, obesity, asthma, bipolar disorder, and post-traumatic stress disorder)). This conflict prevents the Court from engaging in a meaningful review of the ALJ's findings regarding the severity of Plaintiff's impairments and Plaintiff's credibility. See Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) ("[The ALJ] must build an accurate and logical bridge from the evidence to his [or her] conclusion.").

In sum, the ALJ's erroneous finding at step two regarding Plaintiff's fibromyalgia, which conflicts with a portion of his credibility findings, warrants remand.

16

In light of the recommendation to remand and the fact that, upon remand, the ALJ will reassess the severity of Plaintiff's impairments, her credibility, and the RFC, the Court need not address Plaintiff's second assignment of error regarding the ALJ's evaluation of treating source opinions. However, Plaintiff's third assignment of error warrants further discussion. In her third issue on review, Plaintiff maintains that the ALJ's inclusion of simple, routine, repetitive tasks ("SRRTs") in the RFC and hypothetical question to the VE failed to convey Plaintiff's moderate limitation in concentration, persistence, and pace, because SRRTs do not address "the length and duration of [Plaintiff's] concentrational breaks." (Docket Entry 15 at 17 (citing cases from the Third, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits, as well as cases from district courts outside of the Fourth Circuit).)

After the ALJ's decision in this case and the completion of the parties' briefing before this Court, the Fourth Circuit decided Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), which directly addressed the relationship between moderate limitation in concentration, persistence, or pace and inclusion of SRRTs and unskilled work in the RFC and hypothetical question. Id. at 638. In Mascio, the Fourth Circuit held as follows:

> [W]e agree with other circuits that an ALJ does not account "for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical

17

> question to simple, routine tasks or unskilled work." <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits). As Mascio points out, the ability to perform simple tasks differs from the ability to stay on task. On the latter limitation would account for a claimant's limitation in concentration, persistence, or pace.
>
> Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's [RFC]. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical question tendered to the [VE]. <u>See id.</u> at 1181. But because the ALJ here gave no explanation, a remand is in order.

<u>Mascio</u>, 780 F.3d at 638.

In light of the intervening decision in <u>Mascio</u>, upon remand, should the ALJ find that Plaintiff has moderate limitation in concentration, persistence, or pace, the ALJ must explain how he or she accounted for such a limitation in both the RFC and the hypothetical question, if any, to the VE.

## **CONCLUSION**

Plaintiff has established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be reversed and that the matter be remanded under sentence four of 42 U.S.C. § 405(g), for further administrative proceedings to include reevaluation of the severity of Plaintiff's fibromyalgia and other impairments and a reassessment of Plaintiff's credibility as to her subjective

18

complaints of pain.  As a result, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 14) should be granted in part (i.e., to the extent that it requests remand), and Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) should be denied.

                                            /s/ L. Patrick Auld
                                               **L. Patrick Auld**
                                    **United States Magistrate Judge**

November 6, 2015